## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SANDRA SMITH,                    :
    Plaintiff              :        No. 1:20-cv-02316
                          :
    v.                    :        (Judge Kane)
                          :
SERVICE EMPLOYEES                :
INTERNATIONAL UNION, LOCAL       :
668, et al.,                     :
    Defendants            :

### MEMORANDUM

Plaintiff Sandra Smith ("Plaintiff") is a state employee and former member of Defendant Service Employees International Union, Local 668 ("Local 668").  (Doc. No. 1.)  She resigned from Local 668 membership in June 2020, but the terms of her membership permitted her to revoke her dues deduction authorization only during an annual window period that had lapsed just over one month prior.  Plaintiff commenced this action in December 2020, pursuant to 42 U.S.C. § 1983, asserting that she was forced to pay union dues as a nonmember in violation of her constitutional rights under Janus v. AFSCME, 138 S. Ct. 2448 (2018).  Local 668 and Defendants Michael Newsome and Brian T. Lyman (the "Commonwealth Defendants," and with Local 668, "Defendants"), sued in their official capacities, move to dismiss Plaintiff's claims and for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(b)(6) and (c). (Doc. Nos. 31, 36.)  For the reasons that follow, the Court will grant Defendants' motions.

## I.    BACKGROUND[1]

Plaintiff began working for the Pennsylvania Department of Human Services ("DHS") in

---

[1] This background is drawn from the allegations in Plaintiff's complaint, which the Court has accepted as true, as well as exhibits attached to her complaint and matters incorporated by reference or integral to the complaint.  See Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004); see also Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010).

2014 and around the same time joined Local 668 as a member.  (Doc. No. 1 ¶ 21.)  Plaintiff is a public and Commonwealth employee—and Local 668 is an employee organization and representative—as defined in the Public Employee Relations Act ("PERA").  (Id. ¶¶ 10-11) (citing 43 P.S. § 1101.301(2)-(4), (15)).  Local 668 represents Commonwealth employees for collective bargaining purposes and is the exclusive collective bargaining representative for Plaintiff's unit.  (Id. ¶ 11.)  Defendant Newsome is the Secretary of the Office of Administration, and Defendant Lyman is the Chief Accounting Officer and Deputy Secretary for the Office of Comptroller.  (Id. ¶¶ 12-13.)  Newsome "negotiated, entered into, and is the signatory to, on behalf of the Commonwealth," the collective bargaining agreement ("CBA") governing the terms and conditions of Plaintiff's employment.  (Id. ¶ 12.)  Lyman is responsible for issuing employee wages and oversees the Commonwealth's payroll system, including the processing of union dues and other payroll deductions.  (Id. ¶ 13.)

PERA authorizes public employers and employee organizations and representatives to engage in bargaining over membership dues deductions.  (Id. ¶ 16) (citing 43 P.S. § 1101.705).  "PERA defines 'membership dues deduction' as 'the practice of a public employer to deduct from the wages of a public employe, with her written consent, an amount for the payment of her membership dues in an employe organization, which deduction is transmitted by the public employer to the employe organization.'"  (Id. ¶ 17) (quoting 43 P.S. § 1101.301(11)).  The CBA that currently governs Plaintiff's employment is in effect from July 1, 2019, to June 30, 2023.  (Id. ¶ 15.)  The CBA reflects the Commonwealth's agreement to deduct union membership dues and other fees from the wages of an employee who requests in writing that such deductions be made.  (Id. ¶¶ 18-19.)  The Commonwealth then remits those dues and fees to Local 668.  (Id.)

In June 2020, Plaintiff notified Local 668 of her resignation from union membership and

directed the union to immediately cease deducting dues from her wages.  (Id. ¶ 23.)  She

provided the same notice to the Commonwealth, i.e., her employer.  (Id. ¶ 24.)  Local 668

responded by letter dated June 4, 2020, signed by Kaitlyn Gutshall of Local 668, stating: "the

[M]embership [A]pplication you signed on May 9, 2018[,] constitutes a valid contract between

you[] and [] Local 668."[2]  (Doc. No. 1-2 at 13.)  The letter further stated:

> While we will process your request to withdraw from [u]nion membership, you
> remain obligated to pay an amount equal to your regular [u]nion dues payments
> until the annual window period specified in the [attached] [M]embership
> [A]pplication. . . .  This will stop immediately upon the commencement of the
> window period unless you notify us in advance that you wish to rescind your
> request to withdraw.

(Id.) (emphasis added).  The letter advised Plaintiff that Local 668 would process her resignation

request "within 10 days" unless she informed the union that she "wish[ed] to reconsider" her

request.  (Id.)

Concerning the "annual window period" (or "AWP") referenced in Local 668's June 4,

2020 letter, the Membership Application attached to the letter provided that Plaintiff's "dues

deduction authorization cannot be revoked" for a "period of one year from the date of

execution"—and "from year to year thereafter"—unless Plaintiff provided "notice of revocation

not less than ten (10) days and not more than thirty (30) days before the end of any yearly

period[.]"  (Doc. No. 33 at 32.)  It further provided that, if "the applicable collective [CBA]

specifies a longer period before the revocation window, then only that longer period shall apply."

(Id.)  Plaintiff does not allege that the CBA provided for a longer period.

---

[2] To her complaint Plaintiff attached neither Local 668's June 4, 2020 letter nor the Membership Application referenced therein.  (See Doc. Nos. 1, 1-1, 1-2.)  With its motion papers, however, Local 668 submitted the declaration of its grievance coordinator, Gutshall (the "Gutshall Declaration"), attached to which is a copy of the letter and Membership Agreement.  (Doc. No. 33 at 31-32.)  As discussed more fully herein, infra, the Court has considered these documents in deciding the pending motions.

In commencing this action, Plaintiff alleges that Local 668 "did not process [her] membership resignation until at least June 14, 2020" (Doc. No. 1 ¶ 26) and, further, that Defendants "continue to take and accept purported union dues or fees from [her] wages against [her] will and without her consent" (id. ¶ 38).  She asserts two counts against Defendants for violations of her free speech and association rights under the First Amendment (Count I) and her due process rights under the Fourteenth Amendment (Count II).  (Id. ¶¶ 42-64.)  These counts are based on allegations that, following Plaintiff's resignation from union membership, Defendants failed: (1) to inform her of her constitutional right to refuse to pay union dues or fees; (2) to provide her with notice and an opportunity to object to "how any nonconsensual dues or fees taken from her are used" or the "process by which the money is deducted"; (3) to request that she to pay money to Local 668 as a nonmember; and (4) to seek a waiver of her constitutional rights, such as the right to refuse to pay nonmember dues, and to obtain a waiver of those rights from her.  (Id. ¶¶ 31-34, 39.)  Plaintiff avers "on information and belief" that Local 668 "uses the financial support forcibly seized from [her] for purposes of political speech and activity" to which she objects.  (Id. ¶ 40.)  Plaintiff seeks declaratory, injunctive, and monetary relief against Local 668, including a refund of any dues or fees deducted from her wages after her resignation, and declaratory and injunctive relief against the Commonwealth Defendants.  (Id. at 15-17.)

On June 30, 2021, after filing answers to Plaintiff's complaint (Doc. Nos. 20, 23), Local 668—and, separately, the Commonwealth Defendants—filed the pending motions to dismiss and for judgment on the pleadings (Doc. Nos. 31, 36).  Defendants assert, among other things, that Local 668 stopped deducting union dues from Plaintiff's wages as of April 19, 2021, during the AWP reflected in the Membership Application.  (Doc. Nos. 32 at 19, 37 at 5.)  Plaintiff filed briefs in opposition to both motions on July 30, 2021 (Doc. Nos. 40-41), and Defendants filed

reply briefs on August 13, 2021 (Doc. Nos. 42-43).  Having been fully briefed (Doc. Nos. 32, 37, 40-43), Defendants' motions are ripe for disposition.[3]

## II.   LEGAL STANDARDS

Defendants' motions implicate Rule 12(b)(6) and Rule 12(c) of the Federal Rules of Civil Procedure, the applicable standards for which are set forth below.

### A.   Rule 12(b)(6) Motions to Dismiss

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  When reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court need not accept legal conclusions proffered as factual allegations.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Consistent with the Supreme Court's rulings in Twombly and Iqbal, the Third Circuit has identified three steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify

---

[3] The Court granted Defendants leave to file consolidated briefs in support of their pending motions in this case and two other cases involving plaintiffs who assert virtually identical claims against the same Defendants.  (Doc. No. 30.)  The Court subsequently granted Plaintiff and the two plaintiffs from those actions—all three of whom share the same counsel—leave to file consolidated briefs in opposition to Defendants' motions.  (Doc. No. 39.)

any conclusory allegations contained in the complaint "not entitled" to the assumption of truth;

and (3) determine whether any "well-pleaded factual allegations" contained in the complaint

"plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121,

130 (3d Cir. 2010) (internal quotation marks omitted).  A complaint is properly dismissed where

the factual content in the complaint does not allow a court "to draw the reasonable inference that

the defendant is liable for the misconduct alleged."  See Iqbal, 556 U.S. at 678.

### B.     Rule 12(c) Motions for Judgment on the Pleadings

Rule 12(c) permits parties to move for judgment on the pleadings once the pleadings are

closed.  See Fed. R. Civ. P. 12(c).  "A motion for judgment on the pleadings based on the

defense that the plaintiff has failed to state a claim is analyzed under the same standards that

apply to a Rule 12(b)(6) motion."  Revell v. Port Auth., 598 F.3d 128, 134 (3d Cir. 2010).  The

only significant difference between a Rule 12(c) motion and Rule 12(b)(6) motion is that, on a

motion for judgment on the pleadings, the Court reviews not only the complaint, but also the

answer and written instruments attached to the pleadings.  See 2 James Wm. Moore et al.,

Moore's Federal Practice Civil § 12.38 (Matthew Bender 3d ed. 2013).

Accordingly, in assessing such a motion, "the court must 'view the facts presented in the

pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving

party,' and may not grant the motion 'unless the movant clearly establishes that no material issue

of fact remains to be resolved and that [s]he is entitled to judgment as a matter of law.'"  See

Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir. 2019)

(quoting In re Asbestos Prods. Liab. Litig. (No. VI), 822 F.3d 125, 133 n.6 (3d Cir. 2016)).  If

the facts alleged raise a "right to relief above the speculative level," then the claim is plausible on

its face and will survive a motion to dismiss, see Twombly, 550 U.S. at 555-56, or a judgment on

the pleadings, see Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).  In

connection with a Rule 12(c) motion, the Court considers the pleadings, the exhibits attached

thereto, matters of public record, and "undisputedly authentic" documents if the plaintiff's claims

are based on those documents.  See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,

998 F.2d 1192, 1196-97 (3d Cir. 1993).

## III.   DISCUSSION

Prior to Janus, public employees could either join a union such as Local 668 and pay

membership dues or decline to join the union and pay a "lesser nonmember 'fair-share fee,'" also

referred to as an "agency fee."  See LaSpina v. SEIU Pa. State Council, 985 F.3d 278, 281 (3d

Cir. 2021) (citing Janus, 138 S. Ct. at 2486).  This practice was sanctioned by the nation's labor

laws and authorized under Pennsylvania law.  See id. at 281-82 (first citing Diamond v. Pa. State

Educ. Ass'n, 972 F.3d 262, 265-66 (3d Cir. 2020); and then citing 71 Pa.C.S. § 575(b)

(providing that "[i]f the provisions of a collective bargaining agreement so provide, each

nonmember of a collective bargaining unit shall be required to pay to the exclusive

representative a fair share fee")); see also Abood v. Detroit Bd. of Ed., 431 U.S. 209, 211-12

(1977) (affirming the constitutionality of agency-shop arrangements, pursuant to which fair-

share fees were deducted from the wages of nonmembers).

In 2018, however, the Supreme Court in Janus held that "compelling nonmembers to pay

fair-share fees violates their First Amendment associational rights."  See LaSpina, 985 F.3d at

281 (citing Janus, 138 S. Ct. at 2486).  Following Janus—"the primary legal effect" of which

was "to invalidate the Illinois state law that permitted unions to collect 'agency fees' from

nonmembers," see id. at 288—public employers "stopped automatically deducting [agency] fees

from nonmembers," see Belgau v. Inslee, 975 F.3d 940, 944 (9th Cir. 2020).  "But the world did

not change for [individuals] who affirmatively signed up to be union members." See Belgau,

975 F.3d at 944 (stating that "Janus repudiated agency fees imposed on nonmembers, not union

dues collected from members, and left intact 'labor-relations systems exactly as they are'"

(quoting Janus, 138 S. Ct. at 2485 n.27)).  Public employees eligible for Local 668 membership

can still opt into a union and choose to have "monthly dues automatically deducted from [their]

paycheck[s]," see Oliver v. Serv. Emps. Int'l Union Loc. 668, 830 F. App'x 76, 78 (3d Cir.

2020),[4] but they do "not have a right to join a union for free," see id. at 80.

It is against this background that the Court concludes that Plaintiff has failed to state a

plausible constitutional claim for relief against any Defendant under 42 U.S.C. § 1983.[5]  Section

1983 provides citizens a means to redress violations of federal law committed by state officials.

---

[4] Throughout this decision the Court has cited to some "not precedential" appellate opinions ("NPOs") from this and other circuits, including Oliver.  While the United States Court of Appeals for the Third Circuit's internal operating procedures provide that "[t]he court by tradition does not cite to its [NPOs] as authority," see Internal Operating Procedure 5.7, the Third Circuit has acknowledged that its NPOs may nonetheless contain persuasive reasoning, see New Jersey, Dep't of Treasury, Div. of Inv. v. Fuld, 604 F.3d 816, 823 (3d Cir. 2010) (noting that an NPO is "as persuasive as its reasoning"); see also Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 n.12 (3d Cir. 1996) (following an NPO based on "factual similarity" and "look[ing] to the [NPO] as a paradigm of the legal analysis").  As to other circuits' NPOs, the Third Circuit has on occasion declined to "ignore" them where the NPOs are "informative and persuasive . . . ." See United States v. Kluger, 722 F.3d 549, 560 n.15 (3d Cir. 2013) (considering Second Circuit case).  The NPOs cited herein are not binding authority, but the Court has cited to them because: (1) their reasoning is persuasive and consistent with the decisions of numerous federal appellate and trial courts and the United States Supreme Court; (2) the post-Janus body of case law is still growing, and the Third Circuit has yet to opine (in a precedential decision) as to the precise allegations pleaded here; (3) many courts both in and out of this circuit have relied on the Third Circuit's reasoning in its NPOs concerning Janus; and (4) the NPOs bear factual similarities to the allegations advanced in this case.

[5] In reaching this conclusion, the Court can and has considered the applicable CBA (Doc. No. 1-2), Plaintiff's Membership Application (Doc. No. 32 at 32), her notice of resignation from union membership (id. at 22), and Local 668's letter response to her resignation notice (id. at 31).  The CBA is an exhibit to Plaintiff's complaint and can be considered on that basis—the remaining materials are referenced and relied upon in Plaintiff's complaint, integral to her claims, and not disputed as to their authenticity, see supra at n.1.

See 42 U.S.C. § 1983.  The statute provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States of other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights but rather a mechanism to vindicate rights afforded by the Constitution or a federal statute."  See Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist., 877 F.3d 136, 142 (3d Cir. 2017) (internal quotation marks omitted). To state a claim under § 1983 a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005).

The Court now turns to Plaintiff's specific claims under the First and Fourteenth Amendments, beginning with her claims for prospective relief.  In doing so, the Court will not separately address Local 668's motion and the Commonwealth Defendants' motion because resolution of both turns on the same analysis.  The Court therefore refers to all Defendants in its discussion below and will generally cite to Local 668's briefing insofar as the arguments it raises mirror the arguments raised in the Commonwealth Defendants' motion.

### A.    Plaintiff's Claims for Prospective Relief

Defendants first contend that Plaintiff's claims for prospective relief are moot because Local 668 ceased deducting dues from Plaintiff during the 2021 AWP.  (Doc. Nos. 32 at 21-23, 37 at 7-10.)  As to her claims for prospective relief, Plaintiff seeks a declaration either: that Local 668's post-resignation deduction of dues "without proper constitutional notice and waiver violates" her First and Fourteenth Amendment rights; or that Local 668 is required to provide

9

"constitutionally adequate notice and a meaningful opportunity to object to the nonconsensual monies being seized from her and the purposes for which the monies are used . . . ."  (Doc. No. 1 at 15-16.)  She also seeks a permanent injunction enjoining Defendants from collecting dues from her pursuant to the Membership Agreement without providing her notice and obtaining a waiver of her constitutional rights.  (Id. at 16-17.)

A "claim is moot if it no longer presents a 'live' controversy or the parties no longer have a personal stake in the claim's resolution," see LaSpina, 985 F.3d at 289 (quoting Hartnett v. Pa. State Educ. Ass'n, 963 F.3d 301, 305 (3d Cir. 2020)), and "[f]ederal courts may not 'decide questions that cannot affect the rights of litigants in the case before them' or give 'opinion[s] advising what the law would be upon a hypothetical state of facts,'" see Chafin v. Chafin, 568 U.S. 165, 172 (2013) (alteration in original) (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990)).  The "vitality of the controversy and the parties' personal stakes in it must exist not just at the outset of the litigation, but throughout its duration."  See LaSpina, 985 F.3d at 289 (citing Chafin, 568 U.S. at 171-72).  If "developments occurring during the course of adjudication eliminate a plaintiff's personal stake in the outcome of a suit, then a federal court must dismiss the case as moot."  See Rosetti v. Shalala, 12 F.3d 1216, 1224 (3d Cir. 1993).

In support of their contention that Plaintiff's claims for prospective relief are moot, Defendants rely on the Gutshall Declaration, which states that Local 668 instructed the Commonwealth to terminate Plaintiff's dues deductions on April 19, 2021, and indicates that she "will have no further funds deducted from her paychecks for financial support of Local 668 after April 23, 2021."  (Doc. No. 33 ¶ 14.)  Defendants note that the Membership Application, which Plaintiff signed on May 9, 2018, provided that she could not revoke her dues deduction authorization "for a period of one year from the date of execution" and "for year to year

10

thereafter," unless she did so within the AWP.  Defendants further note that the AWP is defined as "not less than ten (10) days and not more than thirty (30) days before the end of any yearly period."  (Doc. No. 33 at 32; see Doc. No. 32 at 19.)  Observing that "yearly period" is marked by the date on which Plaintiff executed the Membership Application (May 9, 2018), Defendants maintain that Plaintiff's AWP was between April 9th to April 29th annually.[6]  (Doc. No. 32 at 18.)  Defendants therefore submit that when Plaintiff resigned from union membership in June 2020, she did not do so within the AWP and was not entitled to revoke her dues deduction authorization.  Conversely, because Local 668 directed the commonwealth to cease dues deductions on April 19, 2021, within the next available AWP, Defendants contend that Local 668 complied with the terms of Plaintiff's Membership Application.  (Id. at 19.)

As a preliminary matter, the Court notes that neither Rule 12(b)(6) nor Rule 12(c) permits the Court to consider the contents of the Gutshall Declaration, a document outside the pleadings and not referenced in or integral to the complaint.[7]  Nevertheless, because federal courts are constitutionally barred from deciding issues that are "no longer live" or where "the parties lack a cognizable interest in the outcome," see Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698 (3d Cir. 1996), the Court may "sua sponte dismiss a complaint . . . pursuant to Federal Rule of Civil Procedure 12(b)(1) when the allegations within the complaint 'are . . . no longer open to discussion,'" among other grounds, see DeGrazia v. F.B.I., 316 F. App'x 172, 173 (3d Cir. 2009) (quoting Hagans v. Lavine, 415 U.S. 528, 536-37 (1974)).  In doing so, the Court "may examine facts outside the pleadings" because such a motion implicates "the trial court's jurisdiction—its

---

[6] As Local 668 notes, "not less than 10 days before" May 9th is April 29th, and "not more than 30 days before" May 9th is April 9th.  (Doc. No. 43 at 20.)

[7] The Court can, however, consider documents attached to the Gutshall Declaration that are referenced in Plaintiff's complaint and implicate matters integral to her claims, see supra at n.5.

very power to hear the case." See Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997)
(internal quotation marks omitted).

In light of these principles, the Court will sua sponte consider Defendants' motions to
include motions to dismiss under Rule 12(b)(1) as to Plaintiff's prospective claims for relief.  In
evaluating Defendants' mootness claims, the Court will therefore consider the following: (1) the
statements in the Gutshall Declaration that Local 668 directed that her dues deductions be
terminated on April 19, 2021, and that no dues would be deducted after April 23, 2021 (Doc. No.
33 at 8); (2) the April 19, 2021 letter from Gutshall to Plaintiff's employer directing the
discontinuance of dues deductions from her wages (id. at 38); (3) Plaintiff's representation that
Local 668 "ceased deductions from [her] wages" (Doc. No. 40 at 13-14); and (4) Defendants'
representation that dues deductions ceased no later than April 23, 2021 (Doc. No. 32 at 19).
Notably, the Gutshall Declaration and the representations of the parties are consistent with
Plaintiff's pleadings because she alleges that Defendants wronged her by refusing to cease dues
deductions until the 2021 AWP under the terms of the Membership Application, not by
collecting dues following the expiration of the AWP.  In sum, based on the record and the
undisputed fact that Plaintiff's dues deductions ceased no later than April 23, 2021, the Court
concludes that Plaintiff's claims for prospective relief are moot.

The Court is not persuaded by Plaintiff's arguments to the contrary.  She argues that
Local 668 "strategic[ally] delay[ed]" filing its instant motion "until it had ceased deductions
from [her] wages, all while defending its entitlement to [her] money."  (Doc. No. 40 at 13-14.)
She also argues that "prospective and injunctive relief" would "establish [her] rights for any
potential future decision to rejoin Local 668."  (Id. at 14.)  As Local 668 notes, numerous courts
have considered post-Janus applications for prospective relief and concluded "that the lawsuits

[we]re moot and that the voluntary-cessation exception to the mootness doctrine does not apply."
See Diamond, 399 F. Supp. 3d at 393.[8]  Concerning voluntary cessation, Plaintiff cites to case
law for the proposition that courts are "reluctant to declare a case moot [] when the defendant
argues mootness because of some action it took unilaterally after the litigation began."  See
Hartnett, 963 F.3d at 306 & 307 (concluding that claims for prospective relief in a post-Janus
agency-fee case were moot).  However, the pleadings of this case, along with the materials
considered above, demonstrate that Local 668 ceased collecting dues not as a strategic tactic to
negate subject matter jurisdiction but pursuant to the terms of Plaintiff's Membership
Application.  These circumstances do not make the Court "skeptical" of Local 668's voluntary
cessation of dues deductions from Plaintiff's wages.  See id. at 306.

Moreover, Plaintiff's theoretical rejoining of Local 668 is too "speculative" and
"hypothetical" to warrant "further judicial review."  See Blanciak, 77 F.3d at 699.  To remain a
live controversy there must be "some injury, or threat thereof, 'of sufficient immediacy and
ripeness to warrant judicial intervention.'"  See Belitskus v. Pizzingrilli, 343 F.3d 632, 650 (3d
Cir. 2003) (quoting Warth v. Seldin, 422 U.S. 490, 516 (1975)).  Here, there "is nothing to
suggest, aside from Plaintiff's own assertions, that [s]he would become a member of [Local 668]

---

[8] The fact that Diamond arose in the context of challenges to the collection of fair-share fees
does not affect the Court's analysis.  To be sure, there is a stronger argument to be made in favor
of mootness in fair-share-fee cases given that unions are now constitutionally barred from
collecting such fees.  Yet the same underlying rationale applies in the context of former union
member's claims for prospective relief.  As to voluntary cessation, "the timing of and reason for
[Local 668]'s cessation" of dues deductions "make it clear that [Local 668] did not cease the
challenged conduct due to this litigation."  See Diamond, 399 F. Supp. 3d at 390-91.  Further, as
the court noted in Diamond, mootness cannot be overcome by speculative assertions concerning
future harm.  See id. at 403.  All that Plaintiff has alleged here is mere speculation that she will
rejoin the union and that the union will in some way violate her rights upon her rejoining.
Additionally, Plaintiff is now fully aware of her constitutional right to decline union membership
and pay no dues or fees.

in the future and suffer the complained-of conduct again." See Molina v. Pennsylvania Soc.

Serv. Union, 392 F. Supp. 3d 469, 482 (M.D. Pa. 2019). She "is not now a member of the

[u]nion," and "there is no basis for deduction of dues pursuant to PERA unless [s]he freely

rejoins the [u]nion, in which case the deductions would be authorized." See Mayer v.

Wallingford-Swarthmore Sch. Dist., 405 F. Supp. 3d 637, 642 (E.D. Pa. 2019). Further, Local

668's "alleged past misrepresentations to [P]laintiff about her rights to join or not join the union

are not sufficient to create a live controversy." See LaSpina, 2019 WL 4750423, at *6; see also

Diamond, 399 F. Supp. 3d at 393.

**B.      Plaintiff's First Amendment Claims**

Plaintiff alleges that she became a DHS employee in 2014, joined Local 668, and then, in

June 2020, notified Local 668 of her resignation from union membership. She does not plausibly

allege that Defendants coerced her into signing the Membership Application or forced her to

authorize the deduction of dues from her wages. Rather, she claims that Defendants failed to

provide her with notice of her constitutional rights, failed to secure a waiver of her rights, and

failed to notify her that she was constitutionally permitted to refuse to pay union dues or fees

following her resignation. None of these claims give rise to violations of the First Amendment,

which provides that "Congress shall make no law respecting an establishment of religion, or

prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the

right of the people peaceably to assemble, and to petition the government for a redress of

grievances." See U.S. Const. amend. I.

Plaintiff's Membership Application contains three sections, the first two of which are

followed by her signature next to a handwritten date—"5/9/18."[9]  (Doc. No. 33 at 32.)  The first

section begins with the bolded language: "YES! I want to join my fellow employees and become

a member of SEIU Local 668."  (Id.)  Directly below that language reads the following:

> I request and accept membership in SEIU Local 668 and I agree to abide by the
> SEIU Local 668 constitution and by-laws.  I authorize SEIU Local 668 to act as my
> exclusive representative in collective bargaining over wages, benefits and other
> terms and conditions of employment with my employer. I understand that
> membership and dues deduction require separate authorizations.  I also understand
> that dues deduction is a requirement for membership in SEIU Local 668 and that
> my financial obligations to SEIU Local 668 are governed by the provisions below.

(Id.)  The second section of the Membership Application provides that Plaintiff's "voluntary

authorization and assignment of dues deduction shall be irrevocable, regardless of whether [she

is] or remain[s] a member," unless upon written notice of her revocation of the dues deduction

authorization within the AWP.  (Id.)  The third section provides for a "Direct Deposit

Authorization," next to which Plaintiff indicated "not at this time."  (Id.)

     As the above provisions indicate, Plaintiff agreed "to be financially responsible for

[u]nion membership dues for a period of one year from the date of signing [the Membership

Application]," and she could "relieve [herself] of [her] dues deductions obligations only by

notifying the [u]nion and the Commonwealth of [her] desire to do so, in writing, during the

[AWP] . . . ."  See Fultz v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 13, No. 20-cv-

2107, 2021 WL 3205427, at *3 (M.D. Pa. July 29, 2021).  Because Plaintiff voluntarily

consented to join the union and pay dues, her reliance on Janus is misplaced.  Janus "protects

---

[9] Plaintiff signed the Membership Application "Sandra A. Lewis."  (Doc. No. 33 at 32.)  Plaintiff
does not allege that the Membership Application does not bear her signature, and she signed her
letter resigning from union membership "Sandra Smith."  (Id. at 22.)  Local 668's June 4, 2020
letter to Plaintiff—which she references in her complaint (Doc. No. 1 ¶¶ 25-27)—similarly bears
the name "Sandra Smith" (Doc. No. 33 at 31).  Thus, it appears that Plaintiff changed her
surname at some point between 2018 and 2020.

nonmembers from being compelled to support the [u]nion," but it does not "render [a union

member's] knowing and voluntary choice to join [the union] nonconsensual."  See Oliver, 830 F.

App'x at 79.  This is so because the First Amendment "does not provide a right to 'disregard

promises that would otherwise be enforced under state law,'" see Fischer, 842 F. App'x at 753

(quoting Cohen, 501 U.S. at 672), and does not give rise to a "right to renege on [a] promise to

join and support [a] union" made "in the context of a contractual relationship between the union

and its employees," see Belgau, 975 F.3d at 950 (citing Cohen, 501 U.S. at 672).

Further, a "subsequent change in the law" (such as Janus) does not "permit a party to a

contract who has enjoyed the benefit of the bargain to rescind it with the benefit of hindsight."

See Oliver v. Serv. Emps. Int'l Union Loc. 668, 415 F. Supp. 3d 602, 607-08 (E.D. Pa. 2019)

(alteration in original), aff'd, Oliver, 830 F. App'x 76; see also Hendrickson v. AFSCME

Council 18, 992 F.3d 950, 961 (10th Cir. 2021) (noting that "[a] change in the law does not

retroactively render [union] agreements void or voidable"); Ehrheart v. Verizon Wireless, 609

F.3d 590, 596 (3d Cir. 2010) (stating that, "[w]here . . . the parties have executed an agreement, a

party cannot avoid its independent contractual obligations simply because a change in the law

confers upon it a benefit" after the parties executed the agreement); Fultz, 2021 WL 3076410, at

*6 (noting that "[p]laintiffs may not avoid their contractual obligations, for which they received

valuable consideration, based upon subsequent changes in contractual law").  Plaintiff "assumed

the risk that subsequent changes in the law could alter the cost-benefit balance of [her] bargain."

See Fischer, 842 F. App'x at 753.

Consistent with these decisions, the Court concludes that Janus did not invalidate

Plaintiff's agreement to authorize the ongoing deduction of membership dues or fees until the

AWP.  To the extent Plaintiff alleges that Defendants "fail[ed] to promptly process her

resignation notice and terminate the associated dues deductions," there is no "First Amendment violation under Janus for an employer's or union's failure to promptly process a member's resignation notice and terminate the associated dues deductions." See LaSpina, 985 F.3d at 288. "The deduction of membership dues without authorization in this context may be an injury. It is just not a constitutional one. And certainly Janus compels no such result." See id. at 287. If Plaintiff "is due a refund of certain monies that were deducted from her wages after she resigned, the claim is not a federal one; rather, it is, if anything, a state court claim for conversion or trespass to chattel." See id. at 281.

The Court recognizes that cases such as Fischer and Oliver are not precedential, and that Belgau and other cases cited herein are decisions from other circuits, but the reasoning adopted by these courts aligns with the "'swelling chorus of courts' [that] has recognized that 'Janus does not extend a First Amendment right to avoid paying union dues' when those dues arise out of a contractual commitment that was signed before Janus was decided." See Fischer, 842 F. App'x at 753 (quoting Belgau, 975 F.3d at 944-45) (noting that "the state common law of contracts is a 'law of general applicability' that does not run afoul of First Amendment principles" (quoting Cohen, 501 U.S. at 670)). Indeed, as one court has noted, one "need look no further than Janus and Cohen to dispose of Plaintiff['s] First Amendment claims," as "courts have universally recognized that Janus does not articulate a path 'to escape the terms' of an agreement to pay union dues, which remain binding under Cohen even where an employee has resigned" from union membership. See Troesch v. Chicago Tchrs. Union, Loc. Union No. 1, Am. Fed'n of Tchrs., No. 20 C 2682, 2021 WL 736233, at *4 (N.D. Ill. Feb. 25, 2021), aff'd, No. 21-1525, 2021 WL 2587783 (7th Cir. Apr. 15, 2021).

Plaintiff's remaining arguments in support of her First Amendment claims are

unpersuasive.  One of her contentions is based on excerpted language from <u>Janus</u>, including that

nonmembers' First Amendment waivers must be "freely given and shown by '<u>clear and</u>

<u>compelling' evidence</u>," and "employees [must] <u>clearly and affirmatively consent</u> before any

money is taken from them . . . ."  <u>See Janus</u>, 138 S. Ct. at 2486 (emphasis added) (quoting <u>Curtis</u>

<u>Publishing Co. v. Butts</u>, 388 U.S. 130, 145 (1967) (plurality opinion)); (Doc. No. 40 at 17).

Plaintiff argues that "Defendants' actions are unconstitutional because without a proper waiver,

'[n]either an agency fee nor any other payment to the union may be deducted from a

nonmember's wages.'"  (Doc. No. 40 at 18) (alteration in original) (quoting <u>Janus</u>, 138 S. Ct. at

2486).  She maintains that she could not have voluntarily, knowingly, and intelligently waived

any rights because she was never informed of her First Amendment right to refuse payment to a

union altogether under <u>Janus</u> and because "the Membership Application does not contain a valid

notice of constitutional waiver."  (<u>Id</u>. at 17.)

      With respect to this argument, as numerous courts have noted, <u>Janus</u> "in no way created a

new First Amendment waiver requirement for union members before dues are deducted pursuant

to a voluntary agreement."  <u>See</u> <u>Belgau</u>, 975 F.3d at 952.  Further, as <u>Janus</u> itself indicates,

public employees who joined a union prior to <u>Janus</u> waived their First Amendment rights

"simply '[b]y agreeing to pay.'"  <u>See</u> <u>Troesch</u>, 2021 WL 736233, at *5 (alterations in original)

(quoting <u>Janus</u>, 138 S. Ct. at 2486).  It bears repeating that Plaintiff does not have a

"constitutional right to disregard promises that would otherwise be enforced under state law,"

<u>see</u> <u>Cohen</u>, 501 U.S. at 672, and that the "subsequent change in the law" effected by <u>Janus</u> did

not confer a right upon her to "rescind [her membership and dues deduction authorization] with

the benefit of hindsight[,]" <u>see</u> <u>Oliver</u>, 415 F. Supp. 3d at 607-08.  Plaintiff points to no authority

for the proposition that union members who opted into unions before <u>Janus</u> enjoy "a First

Amendment right to drop their union memberships at any time."  See Campos v. Fresno Deputy Sheriff's Ass'n, No. 1:18-cv-1660, 2020 WL 6684606, at *4 (E.D. Cal. Nov. 12, 2020).

Plaintiff also contends that "even if Local 668 could rely on a contract to avoid the requirements of Janus—and it cannot—the determination that the alleged contracts are enforceable cannot be made in this procedural posture."  (Doc. No. 40 at 12.)  She notes that in Fischer—where the Third Circuit affirmed a district court's rejection of a post-Janus challenge to union membership agreements on cross-motions for summary judgment—the court acknowledged that the plaintiffs had chosen to enter into their union membership agreements and pay dues in "exchange for valuable consideration."[10]  (Id. at 19-20) (internal quotation marks omitted) (quoting Fischer, 842 F. App'x at 744).  Plaintiff posits that the Court is not positioned to determine whether the Membership Application is an enforceable agreement supported by valid consideration.  (Id.)  She maintains that the "validity of [her] Membership Application[] must be scrutinized before this Court could reject [her] claims on that ground—an inappropriate consideration at this stage of the litigation."  (Id. at 12.)  She similarly argues that the Membership Application is confusing and ambiguous.

Plaintiff's contentions on this score hinge on the proposition that under Janus, a union member can invoke the First Amendment to invalidate a pre-Janus membership agreement that is unenforceable or without adequate consideration under state law.  Regardless of the merits of that proposition, nowhere in her complaint does Plaintiff allege that she did not sign the Membership Application, or that the Membership Application is unenforceable or otherwise

---

[10] Plaintiff does not address the fact that "[j]oining [a] union confer[s] rights and benefits," e.g., rights such as the ability to "vote on the ratification of collective bargaining agreements," serve "on bargaining committees," participate in the unions internal affairs, as well as benefits including "discounts on goods and services, access to scholarship programs, and the ability to apply for disaster/hardship relief grants."  See Belgau, 975 F.3d at 945.

invalid under state law.  Nor has she alleged any "fact[s] support[ing] even a whiff of compulsion" on the part of Defendants.  See Belgau, 975 F.3d at 950 (noting that "[e]mployees, who are union members, experienced no such compulsion" of the kind articulated in Janus).  Plaintiff now speculates that the Membership Agreement "may not be enforceable, and discovery is needed to determine the viability of Local 668's contract-based defense," asserting that "valuable consideration may not be present."  (Doc. No. 40 at 20.)  She asserts that she "may be able to establish that [she] already had the benefits of membership and thus received no further consideration in exchange for agreeing to pay nonmember dues."  (Id.)  These assertions, however, even if alleged in her complaint, fall far short raising a right to relief beyond the speculative level.  The Court is obliged to disregard conclusory averments—which are not entitled to the assumption of truth—and cannot "conjure allegations of an unenforceable contract from thin air to support Plaintiff['s] § 1983 claims."  See Fultz, 2021 WL 3205427, at *6.

Furthermore, contrary to Plaintiff's contention, the Membership Application clearly reflects her voluntary and knowing decision to join Local 668.  The Membership Application's provisions "authorizing the withholding of dues and making that authorization irrevocable for certain periods were in clear, readable type on a simple one-page form, well within the ken of unrepresented or lay parties."  See Fisk v. Inslee, 759 F. App'x 632, 633-34 (9th Cir. 2019).[11]

---

[11] The Fisk opinion does not itself include the relevant provisions, but one of the appellee's briefs in that case sets forth the membership dues deduction provision at issue:

I authorize my employer(s) to deduct from my wages all Union dues and other fees or assessments as shall be certified by 775 under its Constitution and Bylaws and to remit those amounts to 775. This authorization is irrevocable for a period of one year from the date of execution and from year to year thereafter, regardless of my membership status, unless not less than thirty (30) and not more than forty-five (45) days prior to the annual anniversary date of this authorization or the termination of the contract between my employer and the Union, whichever occurs first, I notify the Union and my employer in writing, with my valid signature, of my desire to

The Third Circuit in <u>Oliver</u> addressed a Local 668 membership application/agreement containing similar language, including the following: "I hereby wish to apply for [u]nion membership"; "I hereby apply for membership in the [u]nion"; and "I further request and authorize the Commonwealth [] to deduct from my earnings an amount sufficient to provide for the regular payment of the current rate of union dues." <u>See</u> <u>Oliver</u>, 830 F. App'x at 79 (internal quotation marks omitted). The Third Circuit found it "difficult to imagine language that would be more clear and compelling as evidence of consent to join the [u]nion and also pay union dues." <u>See</u> <u>id.</u> (internal quotation marks omitted). This case is no different.[12]

Accordingly, the Court rejects Plaintiff's contention that it would be premature to grant Defendants' motions at this stage given her inability to point to any allegations or even non-conclusory assertions casting doubt on the enforceability of her agreement, the clear import of the terms of her Membership Application, and the fact that her claim is squarely based on

---

revoke this authorization. 775 is authorized to use this authorization with my current employer(s) and with any other employer(s) in the event I change employers or obtain additional employment.

<u>See</u> Brief of Appellee Seiu 775, <u>Fisk v. Inslee</u>, 759 F. App'x 632, 633-34 (9th Cir. 2019) (No. 17-35957), 2018 WL 2981774, at *7-8.

[12] Plaintiff's additional arguments as to the issues of ambiguity and unenforceability are similarly without merit. For example, she notes that the top right-hand corner of the Membership Application indicates "Date Received: 5/31/18," which she alleges renders the Application ambiguous given that she dated her signatures as executed on "5/9/18." (Doc. Nos. 33 at 32, 40 at 21.) She further argues that the AWP is not clearly set out by the Application's terms. The Court sees no ambiguity. The AWP is based on the "yearly period," which runs "from the date of execution" and "for year to year thereafter." To "execute" in this context is "[t]o make (a legal document) valid by signing." <u>See</u> <u>Execute</u>, Black's Law Dictionary (11th ed. 2019). The date of execution is distinct from the date on which the Membership Application was "[r]eceived," and the AWP is readily discernable and "well within the ken of unrepresented or lay parties." <u>See</u> <u>Fisk</u>, 759 F. App'x at 633-34. Plaintiff also quibbles with the "ten-day waiting period" pursuant to which Local 668 provided her with ten days to reconsider her resignation from membership. (Doc. No. 40 at 23.) There is nothing about that waiting period that undermines or renders unclear the critical provisions in the Membership Application.

Defendants' failure to notify her of her constitutional rights and obtain a waiver from her, a position unsupported by the holding in Janus.  The Court recognizes that Oliver and Fischer and other cases involving the issues presented here were resolved on motions for summary judgment, but the Court is tasked with evaluating the allegations advanced in Plaintiff's complaint, and those allegations do not state a plausible claim for relief based on purported violations of her First Amendment rights.

### C.      Plaintiff's Due Process Claims

Turning to Plaintiff's due process claims, the Court finds that they too fail to state a claim upon which relief can be granted.  "The Fourteenth Amendment provides that no State [shall] deprive any person of life, liberty, or property, without due process of law."  Burns v. PA Dep't of Correction, 544 F.3d 279, 285 (3d Cir. 2008) (citing U.S. Const. amend. XIV, § 1).  "To prevail on a procedural due process claim, a litigant must show (1) that the state deprived h[er] of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due process of law."  Id.  More specifically, Plaintiff must plead and ultimately establish the following five elements:

> (1) that [s]he was deprived of a protected liberty or property interest; (2) that the deprivation was without due process; (3) that [Defendants] subjected [her], or caused [her] to be subjected to, this deprivation without due process; (4) that [Defendants] w[ere] acting under color of state law; and (5) that [] [P]laintiff suffered injury as a result of the deprivation without due process.

See Rockledge Dev. Co. v. Wright Twp., No. 3:08-cv-2064, 2011 WL 588068, at *2 (M.D. Pa. Feb. 10, 2011) (quoting Sample v. Diecks, 885 F.2d 1099, 1113-14 (3d Cir. 1989)).

At the outset, the Court notes that Plaintiff's due process claims suffer from the same overarching defects as her First Amendment claims given that: Janus did not confer any new rights upon public employees who had voluntarily joined a union and agreed to pay dues; the

change in the law effected by Janus did not render preexisting union membership agreements constitutionally infirm; and nothing in Janus gave rise to an obligation on the part of Local 668 to provide Plaintiff with notice of her constitutional rights after she resigned from membership. For these reasons alone, Plaintiff has not stated a due process claim for relief under Janus.

Although there is little case law addressing post-Janus due process claims challenging the deduction of union dues from a nonmember until an AWP, courts that have considered similar claims have found them lacking.  In so finding, courts have noted that Janus "established only protected liberty or property interests for non-union members, not union members like Plaintiff." See Yates v. Washington Fed'n of State Emps., Am. Fed'n of States, Cty. & Mun. Emps., Council 28 AFL-CIO, No. 3:20-cv-05082 2020 WL 5607631, at *3 (W.D. Wash. Sept. 16, 2020).  This rationale is supported by the Third Circuit's recognition of Janus's narrow holding, which is that "nonmembers compelled to pay fees to a union they declined to join suffered First Amendment injury."  See LaSpina, 985 F.3d at 285 (emphasis added).  Courts have accordingly rejected post-Janus due process claims based on a plaintiff's "voluntar[y] assent[] to [u]nion membership and deduction of [u]nion dues."  See Wagner v. Univ. of Washington, No. 2:20-cv-00091, 2020 WL 5520947, at *5 (W.D. Wash. Sept. 11, 2020).

The same is true here.  Plaintiff cannot establish the "depriv[ation] of a protected liberty or property interest" based on dues deductions she herself authorized.  See Marsh v. AFSCME Loc. 3299, No. 2:19-cv-02382, 2021 WL 164443, at *6 (E.D. Cal. Jan. 19, 2021).  The post-resignation deduction of membership dues—for a limited period pursuant to a union membership agreement—does not constitute a "deprivation of an individual liberty interest" when the dues "were deducted . . . to satisfy [a] contractual obligation to the union and did not violate [the] First Amendment . . . ."  See Molina, 2020 WL 2306650, at *11.  In fact, as Molina suggests,

Plaintiff's due process claims are no more than thinly veiled First Amendment claims. Plaintiff alleges that she was deprived of notice, procedures, and processes that would have enabled her to challenge speech with which she does not agree. She strenuously asserts that she "has a liberty or property interest in her wages," but the dispositive issue is whether she "suffered a deprivation of a constitutionally protected interest" flowing from the deduction of "membership dues according" to her Membership Application. See Wagner, 2020 WL 5520947, at *5. Plaintiff is therefore "improperly invok[ing] procedural due process as a means of attempting to protect her asserted First Amendment rights," see Woltkamp v. Los Rios Classified Emp. Ass'n, No. 2:20-cv-00457, 2021 WL 1929054, at *7 (E.D. Cal. May 13, 2021), and as the Court has already held, she has failed to state any viable First Amendment claims.

Finally, the Court notes that Chicago Tchrs. Union, Loc. No. 1, AFT, AFL-CIO v. Hudson, 475 U.S. 292 (1986), upon which Plaintiff heavily relies, is inapposite. Hudson involved a First Amendment challenge to a union's procedure for considering objections by nonmembers who were required to pay fair-share fees. See id. at 296-297. The Supreme Court found several flaws in the union's procedure, including that the procedure offered dissenting nonmembers "the possibility of a rebate," leaving open the possibility that the nonmembers' fair-share fees could be "used temporarily for an improper purpose." See id. at 305. The Supreme Court observed that a "nonunion employee, whose First Amendment rights are affected by the agency shop itself and who bears the burden of objecting, is entitled to have her objections addressed in an expeditious, fair, and objective manner." See id. at 307. Because Hudson concerned the First Amendment rights of nonunion employees, whose payment of agency-shop-related fees constituted a "limited infringement" on their rights, its holding is inapplicable to the circumstances presented here given Plaintiff's failure to allege any First Amendment violations

in the first instance.

## IV.    LEAVE TO AMEND

The Third Circuit has "instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile."  See Phillips, 515 F.3d at 236 (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)).  "This is true even where the plaintiff's failure to state a claim is raised in a defendant's Rule 12(c) motion."  Hu v. Herr Foods, Inc., 251 F. Supp. 3d 813, 824 (E.D. Pa. 2017) (citing Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988) (noting, on appeal from the grant of a Rule 12(c) motion, that "leave to amend shall be freely given, in the absence of circumstances such as undue delay, bad faith or dilatory motive, undue prejudice to the opposing party or futility of amendment")).  "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."  Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) (citing Smith v. NCAA, 139 F.3d 180, 190 (3d Cir. 1998), rev'd on other grounds, 525 U.S. 459 (1999)).

Here, given the clear import of Plaintiff's non-conclusory allegations, her failure to posit any theory of liability under which she can state a § 1983 claim arising from the deduction of dues from her wages until the AWP, and her inability to point to any non-speculative basis for asserting a viable § 1983 claim against any Defendant, the Court finds that permitting Plaintiff to amend her complaint would be futile.  There is simply no plausible basis alleged or asserted by Plaintiff from which this Court can infer the existence of a potential § 1983 claim in these circumstances, and permitting amendment would therefore also be inequitable.

## V.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motions to dismiss and for

judgment on the pleadings (Doc. Nos. 31, 36).  An appropriate Order follows.